JOHN STEELE *vs.* JOHN W. BOND and Wife.

April 3, 1884.

**Foreclosure—Purchase by Mortgagee—Lease to Mortgagor.**—The finding of the trial court that the legal title of the premises in controversy had vested in the plaintiff, and the relation of landlord and tenant become established between the parties prior to this action, *held,* sustained by the evidence.

**Lease—Option to Purchase during Term — Failure to Comply with Condition.**—Where a lease contained a stipulation granting to the lessees "the right and privilege to purchase the leased premises of and from the party of the first part, at any time before the expiration of this lease, for $11,117, to be paid down in cash to the party of the first part, upon the demand of a deed prior to the expiration of this lease," *held,* that payment of the stipulated sum or tender of the same, within the time limited, was an essential condition to the consummation of any binding contract of sale.

**Same — Default not relievable against in Equity.**—Equity cannot vary the terms of such stipulation by an extension of the privilege, nor require an accounting by plaintiff for moneys paid to secure such option or privilege, in the absence of any default or fraud on his part.

This was a summary proceeding under Gen. St. 1878, c. 84, § 11, brought by plaintiff, as landlord, in the municipal court of St. Paul, on September 25, 1880, for the restitution of lots 1 and 2, in block 12, of Rice & Irvine's addition, in that city, alleged to be wrongfully detained by defendants John W. Bond, and Joanna H. his wife, after the expiration of the term of their lease.

The complaint alleges that on March 15, 1880, by indenture of lease, the plaintiff demised the lots to the defendants for the term of

seven months from November 5, 1879, at a rental of $700, and that, by a provision of the lease, the lessor conferred upon the lessees the right to purchase the lots at any time during the term, for the sum of $11,117, to be paid in cash on demand of a deed before the expiration of the term; that the lessees covenanted to pay the rent reserved, and that in case of their default the lessor might re-enter, and also covenanted to surrender possession at the end of the term, unless they should meantime have purchased; that the defendants entered under the lease, and that the lease and all its terms and covenants were afterwards extended and continued until September 5, 1880, the agreement for continuance expressly making time of the essence of the contract. The complaint further alleges that the defendants did not tender the $11,117 for purchase of the lots; that, though the term as extended has expired, they retain possession and refuse to surrender, and demands judgment of restitution.

The defendants, in their answer, admit the making of the lease, but deny entry under it, and, for a second defence and counterclaim, allege:

That on October 25, 1871, the defendants, who had for many years owned the lots, (defendant John W. owning lot 1, and his wife lot 2,) upon which was a house then and ever since their homestead, mortgaged them to plaintiff as security for a loan of $10,000 then made by him to defendant John W., for his sole use, and which he agreed to repay in three years, with interest at 12 per cent. per annum; that, default having been made, the mortgaged premises were sold on foreclosure by advertisement, to plaintiff, on February 24, 1877, for $11,-787.04, being the full amount claimed to be due on the mortgage debt, with costs of foreclosure, and that the proper sheriff's certificate of sale was delivered to plaintiff and recorded.

They further allege that plaintiff has always known that defendant Joanna's property was mortgaged only in suretyship for her husband, but that, between the time of delivery of the certificate of sale and the expiration of the statutory year for redemption, the plaintiff and the defendant John W., without her knowledge, made an agreement that the sum of $11,787.04, for which the property was sold, should constitute the principal of a new loan to be paid to plaintiff by John

W. more than six months after February 24, 1878, and that, notwithstanding the sale, the mortgage should remain in force, and defendant John W. should have until long after February 24, 1878, in which to pay this new debt, and that he should pay plaintiff interest thereon at ten per cent. per annum from the date of sale, and should reduce the principal to $8,000 during the year 1878, and thereupon the plaintiff was to receive a new mortgage for the unpaid balance due, or release the property to enable John W. to encumber it to raise the money to pay off plaintiff; and in the mean time the original mortgage should stand as security for this new contract, and the time for redemption, which would otherwise run and expire as to the foreclosure sale, should not be operative. They allege a payment of $100, by John W., on this new debt during the year for redemption from the sale, and further payments by him thereafter between March 24, 1878, and September 4, 1880, amounting to $5,183.13, (including a payment of $3,000, made August 5, 1878,) all of which were received by the plaintiff as part-performance of the new contract, and in part-payment of the mortgage debt.

That thereby "the plaintiff abandoned, cancelled and destroyed a part of his security,—to wit, the said foreclosure sale and the certificate issued thereunder,—in violation of the rights of defendant Joanna as surety, * * * and that plaintiff, in violation of her aforesaid rights, extended the time of payment of such debt, and otherwise violated her rights as surety."

That on August 5, 1878, the plaintiff and the defendant John W. had an accounting, under their agreement, upon which the sum of $10,371.39 was found due the plaintiff, and assumed as a new principal, to which interest at 10 per cent. for one year, (to August 5, 1879,) and certain sums claimed by plaintiff for insurance, etc., were added, making a total of $11,500; and the plaintiff then executed and placed in escrow a deed of the premises to the defendant Joanna H., to be delivered to her upon payment, by the defendant John W., of $11,500, (the consideration expressed in it,) within the time named in the original agreement, which time was afterwards extended; this being done as part of an agreement for extending the agreement made within the year for redemption, and as further se-

curity for its performance. The payment was not made, and the deed was afterwards wrongfully returned by the depositary to the plaintiff.

That the defendant Joanna was named as grantee in the deed, for the reason that all the payments had been made by John W. from the proceeds of her sole property, and for the purpose of securing her for such advances; but she was never informed of any of the transactions subsequent to the mortgage, except the execution of the escrow, nor did she ever consent to or ratify them.

That on March 15, 1880, while all the agreements were in full force, and the defendant Joanna in ignorance of the transactions, the plaintiff procured the defendants to execute and accept the lease in question by representing that he desired it, and agreeing that it should operate, together with the original mortgage, merely as further security for the loan; that the lease was executed and accepted by defendants under that agreement and for that purpose, and it was never intended to deprive defendants of any of their subsisting equities, but both parties intended it merely as a further security, and the stipulated rent was to be, and was agreed to be, part-payment on the mortgage debt, and the sums paid since the date of the lease (constituting part of the $5,183.13) were paid and received as such, and not as rent; and that the use now sought to be made of the lease by plaintiff is fraudulent and unlawful.

They further allege that their dwelling-house occupies about 30 feet in width of each of the lots, and that since 1854 they have owned in fee and continuously occupied, and still own in fee and occupy, the same as their homestead, and that they never entered under any lease from plaintiff, and have never been his tenants; that they have been and now are ready and willing, and they now offer, to plaintiff such sum as is or shall be found to be due him from them or either of them for any cause; and they pray that the cause be transferred to the district court; that the transactions be declared to be a mortgage by defendant John W. upon so much of his property (lot 1) alone as is not embraced within the homestead; that plaintiff be adjudged to have no lien on any part of the homestead on either of the lots; that the property of defendant Joanna (lot 2) be adjudged clear of any title, interest

or lien of plaintiff; that the plaintiff's right in whatever portion of the property he may be found to have any right in be declared that of a mortgagee only, and be charged with and postponed to the advances made with the moneys of defendant Joanna, with prayers for an accounting, an injunction and for general relief.

The reply alleges that the original mortgage was made to secure money lent to both defendants, more than one-half of which was used to pay off incumbrances on defendant Joanna's lot 2, denies any transactions with either defendant during the statutory year of redemption, sets forth plaintiff's version of the subsequent transactions with both defendants, alleging them to have been merely leases by plaintiff to both defendants, with offers on his part to sell to them at a stated price within a specified time which was of the essence of the contract, and concludes with a general denial.

The defendants moved for a transfer of the action to the district court, which motion was denied, and the municipal court proceeded to judgment of restitution, which was reversed by this court. (*Steele* v. *Bond*, 28 Minn. 267.) In obedience to the judgment of this court, the cause was then transferred to the district court for Ramsey county, where it was tried before *Brill*, J., and judgment rendered for plaintiff. The defendants demanded a second trial, (under Gen. St. 1878, *c.* 75, § 11,) which was had before *Brill* and *Simons*, JJ., whose findings upon the matters in controversy are stated in the opinion, and who ordered judgment for restitution, as prayed in the complaint. A new trial was refused, judgment was entered, and the defendants appealed.

*C. K. Davis*, for appellants.

*W. H. Sanborn*, for respondent.

VANDERBURGH, J. This action was originally brought in the municipal court of the city of St. Paul, under the statute relating to forcible entries and unlawful detainers. Upon a former appeal the judgment of that court was reversed for want of jurisdiction to determine the question of title involved. The action was properly commenced, and the complaint gave the municipal court jurisdiction to entertain the case in the first instance. It could not, however, try the issues raised upon the equitable matters affirmatively pleaded in the an-

swer. *Petsch* v. *Biggs*, 31 Minn. 392. Upon its being remanded, the case was properly certified to the district court, because involving the question of title, and the issues were there tried upon the merits by the court, without a jury. It will be sufficient to refer to the decision of this court upon the former appeal for a statement of the issues and the construction of the pleadings. 28 Minn. 267.

The findings of the court do not sustain the allegations of the answer, that the relation of mortgagor and mortgagee was continued or renewed by any agreement between these parties subsequent to the foreclosure sale, or that the lease in question was given to further secure the plaintiff for the amount already due him in that relation. On the contrary, the court finds that, upon the expiration of the time of redemption, the defendants recognized him as owner of the premises and became his tenants, and from time to time paid him rent for the use and occupation thereof. Upon examining the record we are satisfied that these conclusions are sustained by the evidence, and that the course of dealing between the parties subsequent to the sale, including the negotiations and agreement in respect to a repurchase of the premises by the defendants, is not inconsistent with such conclusions. These findings of fact upon these issues, we think, necessarily dispose of the case, because, if the plaintiff became and continued to be the owner of the premises upon the expiration of the time for redemption, there is no good reason why the agreement of lease above mentioned, which was entered into and accepted by defendants, should not declare and establish an existing relation of landlord and tenant, as it purports to do. Hence, the usual procedure for the recovery of the possession by plaintiff was proper and applicable to this case. The plaintiff had presumptively become possessed of the legal title under the foreclosure. The defendants necessarily assumed the burden of proving a new contract, under which the relation of debtor and creditor was continued, and that the subsequent agreements between the parties were simply new forms of security for the same debt. Upon this state of the issues, the defendants were bound to establish these allegations of fact by satisfactory proof. The issue was substantially narrowed down to these questions of fact, upon which the decision of the trial court must be deemed final.

2. It is, however, claimed that defendants have acquired certain equitable rights and interests by virtue of the stipulations in certain agreements between the parties, the nature of which requires briefly to be considered. The following facts appear by the findings of the court: The foreclosure sale took place February 24, 1877. The amount then due plaintiff, including costs, was $11,543. The court finds that defendants paid rent to plaintiff for the use of the premises from the expiration of the period of redemption to August 5, 1878, and thereupon the parties entered into a written agreement, whereby, in consideration of $3,000 paid by defendants to the plaintiff for the option or privilege of purchasing the premises within one year for the sum of $11,500, without interest, the plaintiff executed a deed of the same, running to defendant Joanna Bond, which he deposited in escrow, to be delivered to her upon condition that such sum should be paid within that time, but also upon the express condition that if payment should not be so made on or before the 5th day of August, A. D. 1879, such deed should be immediately surrendered to the plaintiff. The defendants appear to have remained in possession without rent during the year, save as the same may have been taken into account in fixing the consideration of such agreement, and, having made default in the payment thereby required on the 5th day of August, 1879, they secured an extension of this privilege or option from plaintiff "until the 5th day of November, 1879, at 12 o'clock noon," upon the same terms and conditions, except as to time, and paid as consideration therefor the sum of $483.13, and also paid as rent during the same period the sum of $300. They also failed to comply with these terms, and the deed, after the expiration of the time limited, was duly surrendered to plaintiff, as by the agreement provided.

The court also finds that the defendants remained in possession, with the understanding that they should pay rent at $100 per month, until March 15, 1880, when the parties entered into the lease in controversy, which contained a stipulation giving the defendants "the right and privilege to purchase of and from the party of the first part said land and premises, at any time prior to the expiration of this lease, for $11,117, to be paid down in cash to the party of the first part upon the demand of a deed prior to the expiration of this lease."

This lease ran to June 5, 1880, and was signed by both defendants. It was afterwards extended in writing, with a similar option to purchase, until the 5th day of September, 1880, and it was "expressly stipulated that time shall be of the essence of this contract." The defendants also failed to accept or comply with the terms of such option or privilege by making the payment stipulated, and no sale of the premises was therefore consummated. Plaintiff's debt having been extinguished by the foreclosure, and the relation of debtor and creditor not being found to have been re-established or to exist between the parties, these several stipulations are mere optional agreements for a sale of the premises to the defendants upon the condition of payment within the time limited therefor, and are not to be treated as evidence that plaintiff's title under the foreclosure was defeasible or held as security merely.

Nor do the facts warrant the interposition of equity to relieve defendants from their default. It was plainly the meaning of these agreements that the privilege of purchasing the property should not remain open after the expiration of the time limited. Time was made essential upon the face of the writings. It amounted substantially to a written proposition or offer to sell upon the proposed terms. The assent or act of acceptance, whether by payment or the fulfilment of some other condition, was necessarily to be made within the time limited; otherwise, no contract could be consummated. Pomeroy on Contracts, § 387. Equity cannot vary the terms of such a stipulation by an extension of the privilege. The time limited for acceptance or payment is, in such case, part of the contract or option, and equity cannot interfere, unless in cases where its jurisdiction can be properly invoked on the ground of fraud or mistake, which is not alleged here. *Nicholls* v. *Maynard*, 3 Atk. 519; Adams, Eq. *108, 109. It differs from the case of penalties which are annexed to contracts to secure their performance, or from the case of a forfeiture of some estate or interest actually acquired, and from which a party may seek relief on equitable terms. *Robinson* v. *Cropsey*, 2 Edw. Ch. 138; *Wells* v. *Smith*, 7 Paige, 22; *Davis* v. *Thomas*, 1 Russ. & M. 506; *Kerr* v. *Purdy*, 51 N. Y. 629; *People's Bank* v. *Mitchell*, 73 N. Y. 406. The fact that defendants paid considerable sums to plaintiff to se-

cure these optional privileges of purchase constitutes no ground for an equitable accounting and relief.   *Leonard* v. *Morgan*, 6 Gray, 412; *Ketchum* v. *Evertson*, 13 John. 359.   The payments were made upon a valuable consideration, and the failure to consummate the purchase according to the terms of the agreement was not the fault of the plaintiff, but the fault or misfortune of the defendants.   The plaintiff is not enforcing a forfeiture.   He is not rescinding a contract already made.   He is not in the position of a party invoking equitable relief, entitling the court to impose any conditions.   He stands upon the legal title with which the court finds he is invested, and the continued possession of defendants must be referred to the lease, and not to the proposed purchase which was never consummated.   *Stewart* v. *Murray*, 13 Minn. 393, (426.)

Judgment affirmed.