ERNEST BEHR

*v.*

JACOB HURWITZ et ux. et al.

[Decided October 22d, 1918.]

1. The market value of the premises at the time of execution of a lease with option to purchase is the measure of the fairness of the contract as respects the optionee's right to specific performance.

2. Under a lease containing an option to purchase, where the lessee exercised his option by notice in writing served on the owners, the contract to purchase was complete, vesting the equitable title in the lessee, and afterwards the owners could not, by breach of the covenant to convey, compel the continuance of the relation of landlord and tenant for the purpose of creating a breach of the covenant to pay rent, so as to enable them to declare the option forfeited.

3. The complainant in a suit for specific performance of the purchase option in a lease is not precluded from prevailing because he failed, after exercising the option, to tender rent to mortgagees who held an assignment of rents, where debts to them could be fully protected upon passing of title.

4. Where a lease of certain lands contained an option to purchase those and other adjoining lands, a sublease thereof, whether considered as an assignment of the lease or not, is not an assignment of the option to purchase.

5. The evidence in this case shows that neither the lessee nor the sublessee intended that the option contract in the lease should pass to the sublessee.

6. Where improvements to the property were ordered by the tenement-house commission to be made, which improvements increased the value of the property, it would be inequitable not to charge them to the purchaser.

7. Where an option to purchase is silent as to the character of the title to be given, in the absence of proof to the contrary, the rebuttable implication arises that the title is to be free from encumbrances, but such implication may be overcome by parol evidence.

8. Where the option was "to purchase for a certain sum" this indicates that the parties intended that title should pass in the ordinary manner, viz., that the deed and the purchase-money should be delivered and the encumbrances discharged simultaneously, and therefore to enforce specific performance the purchaser need not tender the money with his notice of the exercise of his option.

On bill, &c.

*Mr. Warne Smyth* and *Mr. James A. Gordon,* for the complainant.

*Messrs. McDermott & Enright (Mr. Frank P. McDermott* and *Mr. Meyer Eichmann),* for the defendants.

GRIFFIN, V. C.

The bill in this cause is filed by the complainant for specific performance of an option or privilege to purchase the lands of Hurwitz and wife contained in a lease from them to the complainant. There are several parties defendants who are mortgagees, and a sublessee for the residue of the term, who have no concern in the controversy beyond the payment of their several mortgage debts, and the peaceable enjoyment of the premises during the term of the sublease. Throughout this opinion Hurwitz and wife will be termed the "defendants." The other defendants will be referred to by name, when dealing with their rights.

The lease in question bears date the 24th of February, 1905, and was made by the defendants to the complainant for a part only of the premises covered by the option. The term granted was for thirteen years, from the 1st of March, 1905. The option clause is as follows:

"And it is herein further expressly agreed by and between the respective parties hereto in consideration of the letting aforesaid, that the party of the second part shall and may have the privilege of purchasing the lands conveyed to the party of the first part (and of which the demised premises form a part) by Charles Wittreich and wife, by deed bearing date February 6th, nineteen hundred and five, at any time during the continuance of this lease, by the payment of the sum of *forty* thousand dollars in cash, and in the event of the purchase of said lands by the said party of the second part, the party of the first part agree to pay Hill Haber a commission thereon of two and one-half per cent. on said purchase price."

A few months prior to the date of the lease the complainant had an option to purchase the property for $27,000, but was unable to take advantage of it for lack of funds. Thereafter

another person took an option, or contract to buy, for $28,000, and assigned the same to the defendants for $1,000 in excess. The evidence clearly indicates that the market value of the premises, about the period when the lease was signed, was about $29,000, which is the time that the fairness of the contract is measured. *Willard* v. *Tayloe, 8 Wall. 557; 21 Myers Fed. Dec. 817; 6 Pom. Eq. § 798.*

The defendants on acquiring title placed two mortgages on the premises, the first for $15,000, and the second for $12,500. This latter mortgage was made with the understanding that the defendants should expend about $1,000 on the premises for improvements and repairs. Behr was informed that these repairs were to be made, and the option was given with the understanding that complainant should have the benefit of them.

On April 4th, 1917, a notice signed by the complainant was served upon the defendants exercising the privilege to purchase, and requesting that the defendants execute and deliver a proper deed conveying a good title, free and clear of encumbrance, and asking, in substance, when and where the deed would be ready for delivery, the encumbrances discharged and the purchase price paid.

The complainant, it will be perceived, exercised the option, according to his notice, about eleven months before the end of the term. The defendants, immediately upon being served with the notice, consulted counsel, who, without binding themselves in any manner, communicated by telephone and letter with complainant's counsel to the effect that they would take the matter up and confer with him later. This they never did. Some time after the middle of May complainant's counsel discovered that (forty days after the notice declaring the option had been served) there was placed on record a mortgage made by the defendants to Klipper & Schoenberg (who are defendants in this suit), dated May 14th, 1917, and recorded May 15th, 1917, for $2,000, with an agreement assigning the rentals to secure the loan. Thereupon the complainant, on May 24th, 1917, filed his bill.

The complainant performed every condition and term of the lease up to June 1st. Thereafter, acting on the advice of

counsel, he did not pay the rent for the month of June. On July 12th, 1917, the defendants began an action of ejectment in the supreme court against the complainant and one Christ Grimbilas, his lessee, which caused the complainant to file a supplemental bill seeking restraint against the prosecution of the suit at law.

The premises in question, since the making of the lease, had almost doubled in value, by reason of which fact it is perfectly clear that the defendants did not intend to comply with the complainant's request to convey. This is evidenced by the statements of Mrs. Hurwitz when the notice declaring the option was served, that "He [Behr] will have to wait until I get ready; he has got lots of time," and of Mr. Hurwitz:

"Where is Behr going to get $40,000 from? I will do nothing at present; I am not ready yet; Mr. Behr has got lots of time. I will not commit myself at present until I read the lease carefully over again,"

and by the failure of the defendants' counsel to confer with complainant's counsel as promised, and the placing of the mortgage on the premises and assigning the rents without notice to the complainant.

The complainant was ready and willing to take a deed and pay the purchase price, and had secured the funds for the purpose. The contract is certain in all its parts and founded on fair consideration. These facts appearing, the complainant is entitled to a decree unless he is in default, or something has arisen subsequent to the making of the contract which either destroys his right or renders it inequitable to grant him relief. *Page* v. *Martin,* 46 *N. J. Eq.* 585; *McCormack* v. *Stephany,* 61 *N. J. Eq.* 208; *Connelly* v. *Haggarty,* 65 *N. J. Eq.* 596; *Lounsberry* v. *Locander,* 24 *N. J. Eq.* 417; *affirmed,* 25 *N. J. Eq.* 554; *Charles J. Smith Co.* v. *Anderson,* 84 *N. J. Eq.* 681; *Willard* v. *Tayloe, supra.*

The defendants allege several things have arisen since the making of the contract which destroy complainant's right to relief.

The first point urged is that the defendant failed to pay the rent for the month of June, 1917, which fell due on June 1st, and thus breaking his contract, he lost the option.

The position thus assumed is untenable. When the complainant declared his option by his notice in writing served on the defendants, a mutual contract was created binding upon the one to buy and the other to sell, thereby vesting the equitable title in the complainant; and thereafter it was beyond the power of the defendants by wrongfully refusing for a period of almost two months (thereby being guilty of a breach of their covenant to convey) to compel the continuance of the relation of landlord and tenant, even after the bill was filed, for the purpose of creating a breach of the covenant to pay rent, thus enabling them to declare the option right forfeited. *Connelly* v. *Haggarty, supra; Lorillard* v. *Keyport Brick and Tile Co., 48 N. J. Eq. 295.*

*Second.* The defendants also say that the complainant should not prevail because a tender should have been made to Klipper & Schoenberg, who were mortgagees with an assignment of the rents.

I can see no force in this point. Their mortgages and the assignments of rents were given to secure debts, which may be fully protected on the passing of the title.

*Third.* The defendants earnestly insist that the instrument in the nature of a sublease made by the complainant to one Grimbilas for the whole term, which reserved the right of re-entry at the end of the term, or for condition broken, and a rent largely in excess of that payable under the lease to the complainant, constitutes an assignment passing not only the term to the sublessee but also the option contained therein.

Both leases cover the same identical premises. The option, however, covers not only the premises leased but other premises, all being contiguous, forming a single plot.

The authorities on the question thus presented, in so far as the lease is concerned, without touching the passing of the option, are in conflict. At common law, a leasing by a lessee for the entire term, even at a different rent, reserving a reversion with right of re-entry for condition broken, would, as between

the landlord and the sublessee, be regarded as an assignment of the term, creating a privity of estate which would enable the landlord to distrain. In Massachusetts the rule is different. *Dunlap* v. *Bullard, 131 Mass. 161.* In New York, down to the decision in the case of *Stewart* v. *Long Island Railroad Co., 102 N. Y. 601; 8 N. E. Rep. 200,* the rule was substantially the same as that in Massachusetts. The effect of this latter decision is to cast doubt upon if it does not destroy the rule announced in the earlier decisions of the same court in *Collins* v. *Hasbrouck, 56 N. Y. 157,* and *Ganson* v. *Tifft, 71 N. Y. 48.* (For other cases on this subject, see *16 R. C. L. tit. "Landlord and Tenant,"* § *319 et seq.,* and notes.)

There has not been called to my attention, nor have I found a case in this state dealing strictly with the question whether, when a lessee sublets for the balance of his term at a larger rent, reserving the rights of re-entry for condition broken and reversion, the instrument is an assignment in law, even though the parties intend it to operate as a sublease. In the case of *Firth* v. *Roe, 53 N. J. Eq. 520,* Vice-Chancellor Pitney based his decision that the sublease was, in effect, an assignment of lease on the fact that "It was given for the precise unexpired term of the lease and reserved precisely the same amount of rent as did the original lease."

The view I take of this case renders it unnecessary to determine whether the instrument operates as an assignment or sublease. The original lease is regular in form, but contains a clause giving the lessee an option to purchase, the consideration for which is the taking of the lease and the agreement to pay rent. It is in the nature of an independent agreement to convey, separable from the lease as such. The lessee may demise the premises to one for the whole balance of the term, which may amount to an assignment, and reserve or not transfer the option, and, notwithstanding that, the sublease may, as between the original lessor and sublessee, constitute an assignment in law; yet, as between the lessee and sublessee, the relation of landlord and tenant may subsist if they so intend. *Mausert* v. *Feigenspan, 68 N. J. Eq. 671; Stewart* v. *Long Island Railroad*

*Co., supra; Sexton* v. *Chicago Storage Co., 129 Ill. 318; 21 N. E. Rep. 920; 16 R. C. L. tit. "Landlord and Tenant"* § *320.*

The complainant never entered into the physical occupancy of the demised premises; he rented them for profit. Grimbilas does not assert that the option passed by his lease. In his answer he asks that he be permitted to enjoy the term granted. It is perfectly plain that neither party to the sublease intended that the option should pass thereby.

The defendants contend that, conceding all this, the assignment of the option passed by operation of law, regardless of the intent of the parties or form of the instrument. It is impossible to conceive that such is the rule. If it were so, Grimbilas could, the day after taking the sublease, declare his option, take a deed of the fee, and, as this would result in a merger of the estates for years in the fee, subsequent to the letting, complainant could not successfully maintain a suit at law against the sublessee to recover the rent reserved in the sublease, as his term would then be at an end. *Den, ex dem. Howell,* v. *Ashmore, 22 N. J. Law 261; Shields* v. *Lozear, 34 N. J. Law 496; Johnson* v. *Riddle, 240 U. S. 467; 36 Sup. Ct. Rep. 395.*

Having reached the conclusion that the complainant is entitled to a decree, the terms upon which he is entitled to such relief will next be considered. Within a very short time after the lease was made the defendants were ordered by the Tenement House Commission to make certain changes, alterations and improvements on the premises in question, which were not in the contemplation of the parties when the lease was given. These improvements were involuntarily made by compulsion of law at an expense of $4,000 to the defendants; and the evidence shows that the value of the premises at the time the option was exercised was enhanced thereby in value equal at least to their cost. The complainant insists that no allowance should be made to the defendants for the repairs and improvements made under the direction of the Tenement House Commission, on the ground that the Tenement House act was in existence long prior to the signing of the lease, and a mere inspection by the defendants would have disclosed the necessity of these improvements to comply with the law. The defendants never consulted the com-

plainant regarding the improvements.    The complainant saw them being made and never investigated.    To concede the claim of the complainant, where the value of the premises has been enhanced by the cost of the improvements, would clearly be in-. equitable; and, in such case, a court of equity should not extend him relief unless it be on the terms that he pay, in addition to the agreed purchase price, the sum of $4,000.    *Willard* v. *Tayloe, supra; King* v. *Raab, 23 Iowa 633; Mentlikowski* v. *Wisniewski, 173 Mich. 642.*

*Fourth.* The defendants also insist that, because nothing is said about the character of the title in the option, all they are bound to do is to deliver a deed and receive the $40,000, without discharging the mortgages on the premises.

It is settled in this state that when an option of this character is given, or a contract is entered into in similar terms, and the agreement is silent as to the character of the title to be given, in the absence of proof to the contrary, the implication arises that the title to be conveyed is to be a good one and therefore free from encumbrances.    That implication may be rebutted.    Notice is sufficient to rebut the mere implication, and parol proof is on this ground admissible.    *Newark Sav. Inst.* v. *Jones, 37 N. J. Eq. 449; affirmed, 38 N. J. Eq. 299.*    See also *Locander* v. *Lounsberry, 25 N. J. Eq. 554; Hawralty* v. *Warren, 18 N. J. Eq. 124; New Barbadoes Toll Bridge Co.* v. *Vreeland, 4 N. J. Eq. 157.*

The complainant had no notice of the existence of the mortgages—at least of their amounts—at the time of taking the lease.    Even if he had, I would be disinclined to find that the intention was that the purchase price contemplated was $40,000 subject to mortgages aggregating $27,500, in view of the evidence not only that the parties considered $40,000 a large sum to be paid under the option, but, in their discussions leading up to the signing of the lease, not only was the subject of conveying subject to or free of encumbrances not discussed, but the general trend of their conversations indicate that the minds of the parties met on the sum of $40,000 as the whole consideration to be paid for a deed in fee free from encumbrances.

*Fifth.* Defendants also say that the complainant should have tendered the $40,000 as a condition precedent to the delivery of the deed; and they cite some cases which they say support this theory. Upon an examination of them, however, it will appear that the payment at the time of the declaring of the option was a condition precedent to the delivery of the deed. Here the option was given to purchase the property for $40,000. The complainant had upwards of $10,000 in bank and had secured a loan to pay the balance. The words "to purchase for a certain sum" plainly indicates that the parties intended that the title should be passed in the ordinary manner, namely, that the deed and the purchase money should be delivered and the encumbrances discharged simultaneously.

If the complainant elects to pay $40,000 together with the $4,000 for improvements, the decree will be in his favor; otherwise, the bill will be dismissed.

A question may arise as to the adjustment of rents of the whole premises, interest and taxes which have been collected or accrued since the filing of the bill, which may be presented on notice; if the parties so desire.