ANTON P. POGREBA AND ANOTHER v. GEORGE H. O'BRIEN AND ANOTHER.[1]

April 11, 1947.

No. 34,331.

---

[1]Reported in 27 N. W. (2d) 145.

*Naughtin & Henley* and *John J. Benton,* for appellants.

*Howard W. Anderson, John M. Gannon,* and *Richard H. Hastings,* for respondents.

JULIUS J. OLSON, JUSTICE.

This was a suit for specific performance of an alleged contract for the sale of defendants' hotel at Grand Rapids. The cause was duly heard and tried by the trial judge, who made findings favorable to defendants. Plaintiffs' alternative motion for amended findings or a new trial was denied, and they appeal.

The facts found, and not in substantial dispute, are these: On September 1, 1944, plaintiff Anton Pogreba and defendant George H. O'Brien entered into a written agreement under the terms of which the latter's hotel, "together with all furniture, fixtures and equipment therein," was leased to the Pogrebas for a period of ten months, the tenancy ending on July 1, 1945. During May 1945, the parties negotiated for a considerable time about plaintiffs' purchasing the property and the terms of payment. On May 21, they signed an instrument, referred to in the evidence as exhibit A, which was drawn on a printed form of contract for deed. This instrument provided that plaintiffs would pay as the purchase price for the property $80,000 "in manner and at times following, to-wit:" $15,000 "cash in hand paid, the receipt whereof is hereby acknowledged, and the balance to be paid in 144 monthly installments, each in the amount of," $601.25, to be paid on the first of each month until July 1, 1957. The deferred payments were computed upon an amortized basis so as to include principal and interest from July 1, 1945, at the rate

of five percent per annum until paid. The initial or down payment was never paid or tendered. Instead, the parties continued their negotiations until the end of the lease term. Because of plaintiffs' failure to make the initial payment and their various requests for changes in the instrument as drawn, defendants terminated negotiations on July 1, 1945. On July 5 the parties met for the purpose of settling their respective rights and obligations under the lease. An accounting was had and a balance struck. O'Brien paid Pogreba $607.89, the amount agreed upon, as evidenced by his check for that amount, which was duly paid. Plaintiffs surrendered their possession under the lease to defendants, and the latter are and ever since have been in possession of the premises. This suit was begun a short time thereafter, with the result heretofore stated.

As we view the situation presented and in the light of the evidence and the findings of the trial court, we conclude that the first and the decisive question is whether the proposed agreement, although signed by the parties, became operative as a contract.

Plaintiffs rely heavily upon Gassert v. Anderson, 201 Minn. 515, 276 N. W. 808. In that case, unlike the present, there was a completed contract. The minds of the parties had met. We recited therein with approval and quoted from Breen v. Mayne, 141 Iowa 399, 404, 118 N. W. 441, 443, as follows (201 Minn. 523, 276 N. W. 811):

"It is important in such cases to distinguish that which pertains to the performance of a contract from that which pertains to its making. To make any sort of a contract, there must be a meeting of minds upon a given subject. An offer without acceptance is not a contract, and as a rule the acceptance to be binding must be in accord with the terms of the offer, and not in some other manner."

And further, quoting from Irvin v. Gregory, 13 Gray (Mass.) 215, 218, we said (201 Minn. 524, 276 N. W. 812):

"When a strict tender of money is required, it must be an unconditional offer of the full amount due, leaving it only at the will of the other to accept it."

In the instant case, it is obvious that the initial payment was a condition precedent to the formation of the contract, and O'Brien emphatically so asserted. The instrument was made in duplicate. Both duplicates were retained by him awaiting tender or payment of the initial payment. As we have seen, no such payment was made or tendered. Instead, plaintiffs sought various modifications from time to time, including the substitution of a residence property owned by them, estimated to be worth between $6,000 and $7,000, to be applied upon the initial payment. This proposition, however, never went beyond the stage of negotiation. Likewise, plaintiffs sought a reduction of the interest rate and the privilege of on-or-before payments. None of these became operative. They, also, were negotiations only and remained so. The suit has for its basis a mere expression of plaintiffs' belated change of mind, coupled with an attempt to rely upon the written instrument as a means of getting the property in question without paying or tendering the initial $15,000. O'Brien testified, "I never figured it [the written instrument] was binding until the payment was made; that was part of the contract." And that, too, was Pogreba's idea. He testified as follows:

"Q. You knew it [the instrument] required you to make a down payment as a prerequisite to closing the contract?
"A. That's right."

Under the terms of the intended agreement, defendants recited and acknowledged payment of $15,000 as "cash in hand paid, the receipt whereof is hereby acknowledged." O'Brien, as a man of business experience, held both duplicates of the proposed contract, knowing that there could be no finality unless and until the down payment was actually made. Naturally and properly, he was not going to permit plaintiffs to get a receipt in full of this very substantial sum and thereby risk the chance of having to refute and annul his own acknowledgment of such payment.

Here, as in Noyes v. City of Fergus Falls, 183 Minn. 496, 498, 237 N. W. 189, 190, "There was neither delivery of it [the instrument]

to plaintiff nor anything else to manifest the final assent of defendant to be bound." Instead, "There was such intentional nondelivery on its [defendant's] part as to show no contract." In Sawyer v. Mutual L. Ins. Co. 166 Minn. 207, 209, 207 N. W. 307, 308, a similar situation was presented. We disposed of it by saying and holding:

"* * * That is the only question and its consideration is simplified, if to start with we recall that a written agreement, even though complete and settled in all its terms, does not become binding as a contract until the parties express an intention that it be so."

Cf. Wm. Lindeke Land Co. v. Kalman, 190 Minn. 601, 606, 252 N. W. 650, 652, 93 A. L. R. 1393, where we held:

"On the execution of a contract in writing, delivery is ordinarily an essential element. Delivery puts into the writing evidencing the contract the 'breath of life,' and the contract must be construed as of the date of delivery and as the parties understood it under the then surrounding circumstances."

See, also, Berkner v. Segal, 168 Minn. 62, 209 N. W. 536; New England Mut. L. Ins. Co. v. Mannheimer Realty Co. 188 Minn. 511, 247 N. W. 803.

We deem further discussion or citation of authorities unnecessary, since we are convinced that the trial court was right in holding that the supposed contract never became operative as a completed agreement. There was in fact no assent on defendants' part to become bound, because the required "down payment" was never made or tendered.

Order affirmed.

Mr. Justice Frank T. Gallagher took no part in the consideration or decision of this case.