Yvonne COOKE, Respondent,

v.

Michael B. BELZER, Appellant,

Robert L. Henretta, Defendant.

No. C7-87-973.

Court of Appeals of Minnesota.

Oct. 13, 1987.

George O. Ludcke, Norman J. Baer, Best & Flanagan, Minneapolis, for respondent.

Jan Stuurmans, Brian J. Todd, Stuurmans & Karan, P.A., Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and NORTON and LOMMEN *, JJ.

## OPINION

A. PAUL LOMMEN, Judge.

This is an appeal from a declaratory judgment awarding respondent proceeds from a 1984 sale of real estate. Respondent claims the proceeds as residuary beneficiary of her deceased husband. The trial court found that respondent's husband held a one quarter interest in a real estate investment partnership at the time of his death in 1983. Appellant claims that respondent's husband assigned this one quarter interest to him in 1981 by either gift or contract of sale.

The trial court held that there was no gift from respondent's husband to appellant because the parties intended there be consideration. The court then held that there was no contract because no consideration was provided. Consequently, the court awarded respondent the proceeds from the sale of real estate owned by the real estate investment partnership.

## FACTS

In the late 1960's, four persons formed a Minnesota general partnership called Colorado Apartments Partnership (C.A.P.). One partner was L.J. Cooke, respondent's now deceased husband. Another partner was M.S. Belzer, appellant's now deceased father. The third partner was Robert L. Henretta. He was the managing partner

---

and is named as defendant because he has custody of the disputed proceeds. The fourth partner is not a party or witness in this action. Each partner had a one-quarter interest in the partnership. No written partnership agreement was ever executed.

In the early 1970's, C.A.P. invested, as a limited partner, in the Edina–Southdale Highrise Development Company (ESHDC). C.A.P. held a 10.45% interest in ESHDC. In turn, ESHDC owned 49% of the Edina Towers, a high rise apartment building in Edina, Minnesota.

The Edina Towers experienced financial losses during the 1970's due to mismanagement, construction problems and high vacancy. Consequently, additional funds were borrowed at that time and C.A.P. guaranteed its allocated share of the debt (approximately $60,000, or $15,000 per partner). This debt was subject to increase as Edina Towers had negotiated letters of credit which it could have drawn upon.

During the late 1970's both L.J. Cooke and M.S. Belzer had recurrent health problems and began to consider the financial problems this investment might create for themselves or their estates. Consequently, they attempted in 1979 and 1980 to sell or give to charity C.A.P.'s limited partnership interest. They found no buyers and no charity was interested in assuming the potential personal liability associated with this interest.

The four partners met in 1980 and discussed the possibility of transferring some interest to appellant. M.S. Belzer felt that appellant, his son, was young enough (and would live long enough) to eventually realize a benefit from the partnership interest. No action was taken at this meeting, in part because the partners were concerned that a transfer might trigger depreciation recapture for the partners.

M.S. Belzer had never discussed this investment with appellant until 1981. In the spring of 1981, M.S. Belzer told appellant that he and L.J. Cooke had "assigned" their interests in the partnership to him. M.S. Belzer told appellant that the asset would be worth nothing in their (L.J. Cooke's and M.S. Belzer's) lifetimes. M.S.

Belzer also told appellant that he would be doing both of them (M.S. Belzer and Cooke) a favor if he accepted the assignments from them.

In this conversation with his father, appellant did not expressly agree or refuse to accept the interests. They did not discuss any of the implications of the transfer such as tax consequences or liability on the guaranty or letters of credit.

Soon after this meeting, appellant met alone with his father. M.S. Belzer presented appellant with three undated documents which read:

> For one dollar and other valuables, Michael B. Belzer on acceptance by signing below now owns ¼ (one fourth) interest in the Colorado Apartments Partnership.

All had been signed by L.J. Cooke. M.S. Belzer and another person had signed as witnesses. In the presence of M.S. Belzer only, appellant signed all three documents above where his name was typed. Appellant did not date the documents. Appellant then kept all three original documents for himself, giving none back to M.S. Belzer and making no copies. (There were also three similar documents purporting to assign M.S. Belzer's partnership interest. The assignment from M.S. Belzer is not a subject of this appeal.)

Appellant had never talked to L.J. Cooke about the assignment before or after signing the instruments. L.J. Cooke never saw the signed documents and never learned that appellant had signed the documents. In December 1981, L.J. Cooke was mentally incapacitated as a result of surgery. He remained incapacitated until his death in October 1982.

In early 1982, appellant happened to speak with Henretta, the managing partner. During the course of the conversation, appellant told Henretta about the assignment from L.J. Cooke. Henretta had had no previous knowledge of the assignment before this conversation.

During March 1982, Henretta and appellant discussed how appellant would treat the assignment. Henretta needed to know because he was preparing the partnership

tax return and wanted to know who to show as partners. It is not clear exactly what appellant instructed Henretta to do. However, Henretta did prepare the 1981 tax returns showing appellant had no interest in the partnership and appellant was well aware of this fact. Appellant also did not show a transfer of this asset either to or from him on his 1981, 1982 and 1983 income tax returns. Appellant had one accountant who prepared all his tax returns and appellant did not tell him about the assignment until 1984. In addition, L.J. Cooke was identified as owning the interest on C.A.P.'s 1982 and 1983 income tax returns. L.J. Cooke's estate tax return, filed in 1983, also showed the partnership interest as an asset of the estate.

After L.J. Cooke died in October 1982, appellant talked to an attorney about the legal consequences of claiming or disclaiming the assignment. In appellant's words, "I wanted to look into the facilitation of accepting the assignment." Appellant did nothing further about the partnership interest until December of 1984.

In the fall of 1984, Henretta telephoned appellant and asked him if he would sign off (disclaim) the interest from L.J. Cooke. Henretta explained that it was just a "legal" thing so that Henretta could disburse funds to Cooke's estate. Appellant initially told Henretta over the phone that he would sign. Unbeknownst to appellant, the partnership's real estate had recently been sold at a profit.

Appellant soon learned about the sale. Appellant then called Henretta to tell him he had never turned down the assignment and that he wanted legal advice before he signed anything.

Appellant never signed the release. Respondent, as residuary beneficiary of L.J. Cooke's estate, brought this declaratory judgment action in February 1985. The disputed proceeds from the 1984 real estate sale are approximately $30,000.

## ISSUE

Did the trial court err in holding that there was no valid assignment of a one-quarter partnership interest from L.J. Cooke to appellant?

## ANALYSIS

This court may review the facts de novo because there was no live testimony and the trial court based its findings solely on documentary evidence. *Northern States Power Company v. Williams*, 343 N.W.2d 627, 630 (Minn.1984). Therefore, we need not defer to the trial court's findings of fact. *Id.*

A valid assignment may be the result of either a gift or a contract. *Bowen v. Willard*, 203 Minn. 289, 294, 281 N.W. 256, 259 (1938). Thus, there must be evidence that the parties intended and completed either a gift or a contract.

### Assignment by Gift

The following elements are required for a valid gift:

1) donative intent;

2) delivery of the gift; and

3) absolute disposition of the property. *Oehler v. Falstrom*, 273 Minn. 453, 456–57, 142 N.W.2d 581, 585 (1966), *aff'd after remand*, 281 Minn. 561, 160 N.W.2d 403 (1968). The person asserting that there is a gift must prove the requisite elements by clear and convincing evidence. *Oehler*, 273 Minn. at 457, 142 N.W.2d at 585.

For a donor to have the requisite donative intent, the gift must be voluntary and gratuitous. *Id.* at 456, 142 N.W.2d at 585. Therefore, a gift is a transfer of property for no return consideration. *Suske v. Straka*, 229 Minn. 408, 413, 39 N.W.2d 745, 749 (1949). Consideration may consist of either a benefit accruing to L.J. Cooke or a detriment suffered by appellant. *Estrada v. Hanson*, 215 Minn. 353, 355, 10 N.W.2d 223, 225 (1943).

The assignment instrument itself recites "[f]or one dollar and other valuables." In addition, L.J. Cooke believed appellant would be doing him a favor by accepting the assignment. Finally, it appears that L.J. Cooke wanted appellant to incur the tax consequences that went with ownership of the partnership interest. All these facts

indicate that appellant was to provide consideration for the transfer. Consequently, we find that appellant has not shown the requisite donative intent by clear and convincing evidence. It is therefore unnecessary to address the other two elements of a gift.

### Assignment by Contract

■ To form a binding contract the parties must agree on the consideration. *Suske v. Straka*, 229 Minn. 408, 414, 39 N.W.2d 745, 750 (1949). Appellant contends that the intended consideration was his accepting ownership and attendant tax consequences. Respondent suggests that L.J. Cooke desired appellant accept ownership and expressly assume all personal liability associated with being a general partner. *See* Minn.Stat. § 323.16 (1980).

We find that L.J. Cooke was concerned only with adverse tax consequences and not with his potential personal liability as a partner. Consequently, we conclude that the parties understood that consideration for the transfer would be appellant's simple acceptance of ownership of the one-quarter partnership interest. Specifically, L.J. offered the partnership interest to appellant. Appellant would accept the offer by assuming ownership of the interest with all its attendant tax liabilities, if any.

L.J. Cooke's offer remained open until he became incapacitated in December 1981. Restatement (Second) of Contracts § 36(1)(d). Appellant claims that he had accepted the offer by signing the written assignment in the spring of 1981.

■ A court must consider the plain meaning of the language used and the surrounding circumstances to determine the true intent of the parties to a contract. *Midway Center Associates v. Midway Center, Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975). A written agreement, though complete in all its terms, does not become a binding contract until the parties express an intention that it be so. *Sawyer v. Mutual Life Insurance Co.*, 166 Minn. 207, 209, 207 N.W. 307, 308 (1926) (quoted in *Pogreba v. O'Brien*, 223 Minn. 430, 434, 27 N.W.2d 145, 146 (1947)). Whether ap-

pellant intended to accept the offer is a question of fact to be determined from the weight of the evidence. *McEwen v. State Farm Mutual Insurance*, 281 N.W.2d 843, 845–46 (1979).

Appellant's signing the instruments does manifest intent to accept the offer. However, his many other actions indicate he did not intend to accept the offer until well after the offer had lapsed. Appellant never dated the instruments. He never gave an original or a copy back to M.S. Belzer or to L.J. Cooke. He did not show the transfer on his income taxes. He acquiesced when the asset was included in L.J. Cooke's estate tax return in 1983. He first claimed ownership in late 1984 only after learning the real estate was sold at a profit.

■ We find that appellant consequently did not manifest an intent to assume ownership of the one-quarter partnership interest until late 1984. Therefore, appellant did not accept the offer which lapsed in December 1981 when L.J. Cooke was incapacitated. Accordingly, we hold that the assignment is void because there was no contract between appellant and L.J. Cooke.

### DECISION

L.J. Cooke, respondent's husband, did not assign his one-quarter partnership interest to appellant by either gift or contract of sale. Therefore, respondent is entitled to the proceeds from sale of real estate owned by the partnership. We affirm the trial court.

Affirmed.