ALLAN SILVERSTEIN et al., Respondents, *v.* UNITED CEREBRAL PALSY ASSOCIATION OF WESTCHESTER COUNTY, INC., Appellant.

First Department, October 23, 1962.

*Herbert J. Bliss* of counsel (*Egan & Bliss*, attorneys), for for appellant.

*Andrew P. Davis* of counsel (*Harold Davis*, attorney), for respondents.

EAGER, J. The defendant appeals from an order which granted plaintiffs' motion for summary judgment in an action, brought on theory of money had and received, to recover from the defendant the amount of a down payment made by plaintiffs in connection with the proposed purchase of certain realty.

It appears that there were negotiations by the plaintiffs with the defendant looking toward the purchase by them of a residence type property owned by defendant. A third person was also interested in the property and the defendant avers that it had also received an offer therefor from him. The plaintiffs were so notified and then, on January 29, 1959, paid to defendant the sum of $4,000 in connection with their offer of $40,000 for the property. Either before or shortly after such payment (this being in dispute), the plaintiff, Gloria Silverstein, on behalf of plaintiffs, signed and delivered to the defendant's broker a certain writing in form of a letter, dated January 28, 1959 and addressed to defendant, as follows:

" This check for $25 is our binder to purchase your dwelling @ 257 Soundview Ave White Plains, NY. for the total purchase price of $40,000.

" This is a firm offer, not subject to revocation for three weeks after the above date (until February 17th).

" And further, we understand that the United Cerebral Palsy Assoc of Westchester County may reject another firm offer or offers in favor of ours.

" A check of $4,000 will be in your office on Jan. 29, 1959."

By the express terms of this letter, there was here " a firm offer, not subject to revocation for three weeks ". In itself, the

writing purported to bind Mrs. Silverstein to hold open until February 17 her offer to purchase the designated property for the price mentioned. If the letter is to be given effect according to its terms, it constituted an offer which was to be irrevocable for the time specified.

Clearly, a party may agree that an offer by him shall be irrevocable for a specified period. By so agreeing, the offer itself may constitute a contract, unilateral in nature, and thereby the offeror may be firmly bound to hold his offer open for the agreed time. (See 1 Corbin, Contracts, §§ 42–48; 1 Williston, Contracts [3d ed.], §§ 61–61D; Restatement, Contracts, ch. 3, §§ 45–46.) Of course, the validity of the irrevocable offer as a contract, like any contract, may depend upon the capacity of the contracting parties, the existence of a consideration, compliance with the Statute of Frauds, delivery and acceptance, or other factors. If in writing, however, it is now expressly provided by statute that the offer which states that it " is irrevocable during a period set forth or until a time fixed, * * * shall not be revocable during such period or until such time because of the absence of consideration for the assurance of irrevocability." (Real Property Law, § 279. See, also, Personal Property Law, § 33, subd. 5.)

The plaintiffs do not successfully attack the validity and effect of Mrs. Silverstein's letter as an irrevocable offer binding her for the time specified. Their position, however, is that the offer was effectively withdrawn or cancelled out, or, in any event, not validly accepted.

Following the receipt of the letter, the defendant rejected the other offer which it had received for the same property. Then the defendant's attorney prepared proposed formal contracts of sale and transmitted copies of them to the attorney for the plaintiffs with a letter dated February 4, 1959, stating, " I trust they are satisfactory to you, if not I will be happy to adjust to your suggestions. As soon as they have been signed I will get the necessary Court approval and Organization resolutions necessary." The plaintiffs, however, on receiving the proposed contracts, became desirous of withdrawing their offer. In a talk with an officer of the defendant on February 8 or 9, the plaintiffs took the position that they were withdrawing their offer because there was less property than they were given to believe that they were purchasing, and also because the conditions of the existing mortgage were different than represented. They were told, however, that the property was as described in the contract and that the mortgage terms were as fixed in the mortgage; and, " that's the way it was ".

In any event, on the record here, it appears that, prior to the time specified for acceptance of plaintiffs' offer, they were seeking to withdraw the same claiming that, under the circumstances, they were not bound to complete a purchase of the property. On the other hand, there is evidence that the defendant, at least for a time, was seeking to hold plaintiffs to their offer.

The applicable law seems clear. An irrevocable offer, while a unilateral contract, may, upon proper acceptance by the offeree, be converted into and superseded by a further contract, to wit, a mutually binding bilateral contract. Until so converted and for the time agreed upon, the offeror is bound to hold his offer open according to its terms. During such time, like any contract, the irrevocable offer may only be modified, released or rescinded by agreement of the parties. It cannot be unilaterally withdrawn, revoked or rescinded by the offeror. (1 Corbin, Contracts, § 43; 1 Williston, Contracts [3d ed.], § 61-B; *Heller* v. *Pope,* 250 N. Y. 132; *Cochran* v. *Taylor,* 273 N. Y. 172, 183, 184.) And, unlike the case of an ordinary offer having no contractual status, the irrevocable offer is not deemed rejected and cancelled out by mere counterproposals or negotiations not culminating into any agreement between the parties. Absent a new agreement, express or implied, or facts and circumstances creating an estoppel, the irrevocable offer continues during and survives the making of a counterproposal and discussions in connection therewith. (See 1 Corbin, Contracts, § 91.)

In the light of the foregoing, it is clear that plaintiffs' irrevocable offer continued to remain open and subject to acceptance on and following the transmittal to them of the proposed contracts by the February 4 letter. In fact, the plaintiffs were expressly told by the letter of transmittal that if the contracts "are [not] satisfactory to you, * * * I will be happy to adjust to your suggestions". Thus, the very terms of the letter indicated that the contracts were submitted in accordance with plaintiffs' offer and were not intended to nullify or modify it.

Notwithstanding the plaintiffs' attempt to withdraw from the offer contract, the defendant insisted that it was binding upon them, and notified Mrs. Silverstein by letters dated February 10 and February 11 that the defendant "hereby accepts your offer". Because, however, the said letters expressly stated that the transaction was to close "in accordance with contract forwarded to your attorney," the plaintiffs argue that these letters did not constitute such unconditional acceptance of the offer as to bring into being a new mutually binding contract of purchase and sale. True, when an offeree decides to accept the irrevocable offer, he must act unconditionally and in accordance with its

terms. (See 1 Williston, Contracts [3d ed.], § 61-D.) But, here, it is rather clear that the plaintiffs, on the making of the offer, contemplated the signing of formal contracts of sale and that they were not generally objecting to the contracts of sale as proposed by the defendant's attorney. Specifically, as indicated by a letter of Mr. Silverstein, dated March 17, 1959, their objections to the proposed contracts of sale rested solely upon the ground that the terms therein regarding acreage and mortgage conditions differed from the oral representations as made to them.

Whether or not the size of the plot and mortgage terms were in fact misrepresented would present a triable issue. Of course, a determination of this issue, if in favor of defendant, may not be decisive of the rights of the parties. Then, a determination may be required as to whether or not the plaintiffs' offer was validly accepted by defendant. This depends upon what was intended by defendant and understood by plaintiffs, and this, on the record here, presents triable issues. We are to bear in mind that the plaintiffs, by objecting to defendant's acceptance on specifically stated grounds, if that be the case, may be deemed to have otherwise acquiesced in the acceptance as sufficiently in accordance with the offer except for the stated grounds. Moreover, if the stated grounds be proven to be clearly untenable, and plaintiffs' withdrawal on basis thereof was in bad faith, then they may be deemed to have repudiated their contract. Also, in any event, it may very well be, as the April 2 resolution of defendant's board of directors rejecting plaintiffs' offer would seem to indicate, that any contract with plaintiffs was rescinded or abandoned. But here, too, the disputed issues require a trial.

Contractual obligations voluntarily assumed are not to be regarded lightly. In the final analysis, the question here is whether or not plaintiffs did willfully default in the performance of or repudiate their contractual obligations. If there was a willful default in performance or repudiation on their part of a contract binding upon them, and such contract was not rescinded or abandoned, and if it be found that the sum paid was paid as part payment on the purchase price, then, under the law of this State, it is immaterial that the defendant may be inequitably enriched by a denial to plaintiffs of a recovery back of their down payment. Where the payment by a vendee was a down payment on the purchase price and not merely made as a binder for a future contract (cf. *Cohn* v. *Smarr,* 214 App. Div. 589) and he willfully defaults under his contract, it is settled in this State that he may not in law or in equity recover his down payment even though the vendor resells the premises

for a sum equal to or greater than the contract price. (*Lawrence v. Miller,* 86 N. Y. 131; *Keystone Hardware Corp.* v. *Tague,* 246 N. Y. 79, 83; *Mistroff* v. *Scar-White Homes,* 281 App. Div. 844; *Kaplan* v. *Scheiner,* 1 A D 2d 329; *Powers* v. *Mulford,* 3 A D 2d 99, 104; *Amity Associates* v. *Amity Farms Shopping Center,* 11 A D 2d 811; *Knight* v. *Carter,* 1 Misc 2d 351.)

Our conclusion is merely that there are issues which should be thoroughly explored on a trial. The order, entered February 23, 1962, insofar as it grants plaintiffs' motion for summary judgment and strikes defendant's answer, should be reversed on the law, with costs to abide the event, and plaintiffs' motion for summary judgment denied.

RABIN, J. P., VALENTE, McNALLY and STEUER, JJ., concur.

Order, entered on February 23, 1962, insofar as it grants plaintiffs' motion for summary judgment and strikes defendant's answer, unanimously reversed, on the law, with costs to abide the event, and plaintiffs' motion for summary judgment denied.