## REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Appellant,

v.

## MARQUETTE BANK & TRUST COMPANY OF ROCHESTER, Respondent.

### No. 50342.

Supreme Court of Minnesota.

July 3, 1980.

---

Dorsey, Windhorst, Hannaford, Whitney & Halladay, Craig A. Beck, and Jill A. Smith, Rochester, for appellant.

Levitt, Palmer, Bowen, Rotman & Share and J. Patrick McDavitt, Minneapolis, for respondent.

Heard before ROGOSHESKE, PETERSON, and TODD, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff, Republic National Life Insurance Company (Republic), brought an action against defendant, Marquette Bank and Trust Company of Rochester (Marquette),[1] for a declaratory judgment to determine the enforceability of an option to purchase an office building. On cross-motions for summary judgment, the district court rejected Marquette's contention that there was no justiciable controversy but found the option was not extinguished, abandoned, or illegal. Accordingly it grant-

1. At the time the lease was entered into, the bank was known as the Olmsted County Bank and Trust Company. It later became the Marquette Bank and Trust Company of Rochester.

ed summary judgment for Marquette, and Republic appeals from that order. We affirm.

The office building involved in this case was built in 1964 for Lorraine Realty Company (Lorraine). Under a lease agreement dated June 22, 1964, Lorraine, as landlord, leased space in the building to Marquette, as tenant, for Marquette's banking operations for a 50-year term. Republic held a mortgage on the property and agreed to the terms of the Marquette lease.

Included in the lease is an unconditional option for Marquette to purchase the building. The option is exercisable during the first 30 years of the lease term. The clause further provides:

> The option granted in this Section 901 shall be a continuing one, and may be exercised by [Marquette] giving to [Lorraine] written notice of its intention to purchase within ninety (90) days immediately prior to the expiration of either the 5th, 10th, 15th, 20th, 25th or 30th year of the leasehold term.

The purchase price of the building is to be determined by a formula set forth in the option contract.[2] If the parties are unable to agree upon the amounts to be figured into the purchase price, the price will be determined by a board of arbitrators subject to court review.

On March 14, 1969, Marquette sent Lorraine a letter giving notice to exercise its option to purchase the building. Marquette and Lorraine disagreed, however, on the calculation of the purchase price, and the dispute was submitted to a panel of arbitrators. The panel rendered its decision on May 8, 1972, and its award of $2,217,219 was confirmed by the district court.

Upon learning the purchase price of the building, Marquette refused to complete the purchase. Lorraine commenced an action for specific performance, and Marquette defended its refusal to perform on the ground of Minn.Stat. § 48.21 (1978), which provides:

> Such bank may purchase, carry as an asset, and convey real estate for the following purposes:
>
> (1) such as shall be necessary for the convenient transaction of its business, * * * which investment less normal depreciation shall not exceed 40 percent of its paid-in capital stock and permanent surplus, and upon written approval of the commissioner of banks, not to exceed 60 percent of its paid-in capital stock and permanent surplus.

Marquette's capital stock and surplus totaled $1,650,000; therefore, its total real estate investment under § 48.21, even with the commissioner's approval, could only reach $990,000. Because the building purchase price of over $2,000,000 far exceeded this ceiling, the district court (Mulally, J.) found "that the alleged contract for sale of the bank building * * * is violative of the Minnesota Statute and is therefore unenforceable and void."

Approximately 5 months later Lorraine defaulted on its mortgage payments, and Republic foreclosed and purchased the building at the foreclosure sale. In August 1978 Republic brought this action to have the option declared extinguished because of Marquette's 1969 notice of exercise of the option or, alternatively, to have the option declared void under § 48.21.[3]

■ 1. The first issue is whether Marquette, by giving proper notice of its intent to exercise the option, extinguished the option and therefore cannot exercise it again

---

**2.** The purchase price is to be the sum of the out-of-pocket construction and improvement costs incurred by Lorraine and the value of Lorraine's interest in the land (set at $450,000), less 1% of that sum for each year of the lease which has passed before the option is exercised.

**3.** Republic had previously brought an action against Marquette, seeking a declaration that in

the event of foreclosure Marquette's rights under the lease, including the option, would be terminable. We held, however, in *Republic Nat'l Life Ins. Co. v. Marquette Bank & Trust Co. of Rochester*, 312 Minn. 162, 251 N.W.2d 120 (1977), that the lease was superior to the mortgage and that Republic would take subject to Marquette's rights.

in the future even though the option was to run until 1995. Republic argues that when an option, which is simply an offer irrevocable for an agreed period, is exercised in the manner prescribed by the option contract, the option is merged like any other offer into the resulting bilateral purchase contract. *Gassert v. Anderson*, 201 Minn. 515, 518, 276 N.W. 808, 809 (1937); *Silverstein v. United Cerebral Palsy Association*, 17 A.D.2d 160, 163, 232 N.Y.S.2d 968, 971 (1962); 1A. Corbin, Contracts § 264 (1963). Since the option contract in this case refers to only one option, though exercisable at various times, Republic contends that once Marquette gave notice of exercise and a bilateral contract was formed, there was no option left to be exercised at a future date.

It is undisputed that Marquette properly gave unconditional notice of its intent to exercise the option. Furthermore, Marquette does not contest Republic's interpretation that the contract contemplates only one option rather than a series of options. Finally, Marquette apparently accepts, as did the trial court, Republic's legal theory that an "effectively exercised" option would be merged into the resulting purchase contract and could not be exercised again in the future. The parties disagree, however, on the definition of "effective exercise."

Republic contends the option is effectively exercised and therefore terminated once it has been exercised according to the terms of the option contract, even if the resulting contract to purchase is, as here, found to be void and unenforceable. In support of this contention, it cites *Gassert v. Anderson*, 201 Minn. 515, 276 N.W. 808 (1937), in which we held that once a tenant exercised its option to purchase the leased property, the landlord/tenant relation ceased and the vendor could not terminate the lease and prevent the purchase on the basis of an alleged breach that occurred before the option was exercised. Republic contends *Gassert* thus supports the principle that it is the exercise of the option that extinguishes it, regardless of the validity of the resulting contract. In *Gassert*, however, the resulting contract was valid and not void; the enforceable bilateral contract that arose in that case created in the tenant a greater property interest into which the lesser option right was merged. Therefore, *Gassert* does not govern the instant case nor can Republic cite to us other cases that discuss the fate of an option when the resulting contract is void and not binding on the parties.

Republic refers to several decisions from other courts which have stated that where an option is rejected outright or accepted on terms other than the terms of the option contract, the optionee cannot later revive the option by tendering acceptance in compliance with the contract. *Beaumont v. Prieto*, 249 U.S. 554, 556, 39 S.Ct. 383, 63 L.Ed. 770 (1919); *Landberg v. Landberg*, 24 Cal.App.3d 742, 757, 101 Cal.Rptr. 335, 345 (1972); *Jones v. Moncrief-Cook Co.*, 25 Okl. 856, 865, 108 P. 403, 407 (1910). These cases simply stand for the proposition that where the optionee has demonstrated he does not wish to accept the option, the option, like any offer, is extinguished.[4] None of these cases involved a long-term option for a purchase contract that could be void at one time but valid at some future time. Marquette, by its inability to complete the contract at this time, has not demonstrated that it will never want and be able to exercise the option and perform the purchase contract in the future. Thus, the cases cited by Republic are not helpful.

Marquette, on the other hand, contends that "effective exercise" of an option requires not only exercise in accordance with the terms of the option but that the resulting purchase contract be mutually binding and enforceable. In *Silverstein v. United Cerebral Palsy Association*, 17 A.D.2d at 163, 232 N.Y.S.2d at 971, the New York court stated that an option "may, upon

---

4. In fact, in *Silverstein v. United Cerebral Palsy Ass'n*, 17 A.D.2d 160, 163, 232 N.Y.S.2d 968, 971 (1962), cited by Republic, the court specifically noted that an option, unlike an ordinary revocable offer, is not considered rejected by counteroffers, but only by express rejection. This suggests that options will not be found "extinguished" so easily as ordinary offers. *See also* 1A. Corbin, Contracts § 91 (1963).

proper acceptance by the offeree, be converted into and superseded by a further contract, to wit, *a mutually binding bilateral contract.* Until so converted and for the time agreed upon, the offeror is bound to hold his offer open according to its terms." (Emphasis added.)

While *Silverstein* did not specifically consider the case of a nonbinding bilateral contract, the language certainly indicates the option is not merged until there is a binding obligation to take its place.

The reason for "extinguishing" an option upon formation of a bilateral contract is that the option no longer has any separate meaning. Here no enforceable contract was created, but the option was intended to be open 30 years. There is the distinct possibility that it can be exercised and an enforceable contract entered into at some future time within that period. It makes no sense, then, to mechanically "extinguish" the option just because the transaction did not work on one occasion. It is very possible that one of the reasons for the long-term option as it was structured was to allow Marquette the opportunity to examine its capital position at each 5-year juncture to determine whether it would be permitted to purchase the property.[5] We hold, therefore, that the option was not extinguished by Marquette's ineffective notice of exercise of the option.

2. Republic next contends that because Marquette "abandoned" the purchase contract formed by its exercise of the option, it also abandoned the option itself. We have stated that the party seeking to prove abandonment of a contract must present clear and convincing evidence of an intention by the other party to abandon its rights. *Desnick v. Mast,* 311 Minn. 356, 365, 249 N.W.2d 878, 884 (1976); *Country Club Oil Co. v. Lee,* 239 Minn. 148, 154, 58 N.W.2d 247, 251 (1953). Such intention may be ascertained from the facts and cir-

cumstances surrounding the transactions and may be implied from the acts of the parties. *Buresh v. Mullen,* 296 Minn. 150, 153, 207 N.W.2d 279, 281 (1973); *Ahlstrand v. McPherson,* 285 Minn. 398, 401, 173 N.W.2d 330, 333 (1969).

Republic contends Marquette's refusal to perform the void purchase contract is by itself sufficient to show abandonment of the option. The argument is patently without merit. Marquette's refusal to perform a contract that it was not permitted to perform does not mean it abandoned the option where it is possible that exercise of the option could result in a legal contract in the future. No other evidence of abandonment was brought up on the motion for summary judgment. We therefore hold that Marquette did not abandon its option rights.

3. Finally, Republic contends that because § 48.21 currently prohibits Marquette from purchasing the building at the contract price, the option itself is illegal as well. This argument, too, must be rejected. Section 48.21 does not prohibit options to purchase, but only actual purchases. Thus, it would not void an option which could be exercised at some future date when the bank has sufficient capital stock and permanent surplus. The long-term nature of the option contemplates exercise at a time when the bank would be permitted to complete the purchase. It would be very difficult for a bank to engage in extended planning if options of this nature were prohibited to it.

The decision in *Handy v. St. Paul Globe Publishing Co.,* 41 Minn. 188, 42 N.W. 872 (1889), does not dictate a different result. That case held an illegal contract cannot be ratified by a change in the law. Republic suggests that by the same rationale, an illegal contract should not be ratified by a

5. Republic expresses concern that Marquette will be able to manipulate the option agreement by exercising it every 5 years and waiting for a favorable price. Because the elements of the purchase price have already been determined by the panel of arbitrators and will not change,

over time, Marquette can determine whether the price is favorable and whether Marquette's capital is sufficient without having to formally exercise the option each time. This flexibility is inherent in the nature of a continuing option.

change in circumstances, *i. e.*, a change in Marquette's capital position. Even if that argument correctly states the law, it is not applicable here. The option contract is not prohibited by § 48.21 and therefore does not require ratification. A bilateral purchase contract will not arise until exercise of the option, and its legality under § 48.21 can then be evaluated according to the bank's capital position at that time.

Affirmed.