### In re G. WEEKS SECURITIES, INC., Debtor.

### Francis J. SCOTT and T. Harold Craig, Co-Trustees for G. Weeks Securities, Inc., Plaintiffs,

v.

### SAN DIEGO NAVY FEDERAL CREDIT UNION, Defendant.

Bankruptcy No. 79-22564.
Adv. No. 80-0220.

United States Bankruptcy Court,
W.D. Tennessee, W.D.

Sept. 23, 1983.

Bruce Kramer and Martin Aussenberg, Memphis, Tenn., for plaintiffs.

Blanchard E. Tual, Memphis, Tenn., Mark A. Saxon, San Diego, Cal., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM B. LEFFLER, Bankruptcy Judge.

### I

In this Chapter 11 proceeding the Co-Trustees of the debtor, G. Weeks Securities, Inc. (hereinafter "plaintiffs"), filed a complaint against the defendant, San Diego Navy Federal Credit Union. The complaint alleges that the defendant breached a standby contract by failing to take delivery of Two Million Dollars ($2,000,000.00) of Government National Mortgage Association eight percent (8%) mortgage bonds at a price of 99.5% of par on March 20, 1980.

The defendant maintains that it did not breach the above-mentioned contract because the plaintiffs failed to give timely, written notice of intent to deliver the bonds as required by the contract.

### II

The parties entered into a contract on August 7, 1978, whereby the debtor, G. Weeks Securities, Inc., in consideration of paying a $100,000.00 commitment fee, purchased an option to sell the defendant $2,000,000.00—8% Government National Mortgage Association ("GNMA") backed bonds at a price of 99.5% of par for settlement (delivery) on March 20, 1980.

This option was evidenced on a form prepared and drafted by the debtor which contained, inter alia, the following two provisions:

> Written notice of intent to deliver securities under this optional delivery commitment must be received by February 20, 1980.

> No term or provision of this agreement may be waived or modified unless in writing and signed by each of the parties hereto. Time is of the essence.

The debtor filed a Chapter 11 Petition on November 6, 1979. After the Chapter 11 Petition was filed, the Creditors' Committee retained the firm of UMIC Government Securities to provide the expertise required to complete the above-mentioned transaction and other similar transactions. Francis J. Scott (hereinafter "Scott") who was the manager of UMIC Government Securities, was on February 7, 1980, appointed Co-Trustee in this Chapter 11 case. Scott was authorized to act as a consultant to advise the Co-Trustees and their attorneys on completing transactions that were still open.

On or about January 18, 1980, Scott called and spoke to the defendants' agent, John Barnish (who is now deceased), by telephone. In that telephone conversation Scott advised Barnish that he intended on fulfilling the transaction, but the contract requirement of written notice was not mentioned by either individual.

On February 28, 1980, which was eight days after the defendant was to have received the required written notice of intent to deliver the bonds, Scott telephoned Barnish and was informed by Barnish that the defendant would not accept delivery of the bonds since written notice to exercise the option was not received by the defendant on or before February 20, 1980. As a result of the telephone conversation on February 28, 1980, Scott sent a Mailgram which notified the defendant that it was a confirmation of their prior telephone conversation wherein the defendant was notified of the debtor's intent to deliver the bonds.

The parties in this case also had one other transaction which occurred before the above-mentioned transaction. In this earlier transaction the debtor and the defendant entered into an optional delivery contract in June, 1978, whereby the defendant agreed to take delivery of Two Million Dollars ($2,000,000.00) in 8½% GNMA bonds at a price of 99.4375 on January 18, 1980. In consideration for the defendant agreeing to "standby" to take delivery of these bonds, at the option of the debtor, the defendant received $100,000.00 as a commitment fee. This June, 1978 contract (hereinafter referred to as the "first transaction") contained similar written provisions as the second transaction and required that a written notice of intent to deliver the bonds be sent to the defendant on or before December 18, 1979.

In a telephone conversation in June, 1979, the parties agreed to modify the first transaction to increase the yield on the bonds. In accord with that telephone conversation, the debtor sent a letter dated July 18, 1979, to the defendant which reflected the modifications and informed the defendant that the debtor intended to deliver the bonds on January 18, 1983.

Because the debtor was experiencing severe cash flow problems, the debtor telephoned the defendant in October, 1979, and requested an acceleration of the settlement of the bonds under the first transaction, as modified, from January 18, 1980 to October 19, 1979. The defendant agreed to the acceleration after certain modifications were made to reflect an early withdrawal penalty, and the debtor purchased and delivered to the defendant $2,000,000.00—9½% GNMA bonds on October 19, 1979.

The Complaint at bar, however, involves an alleged breach of contract in the second transaction. The first transaction is an entirely separate transaction and is introduced by the plaintiffs in this case to show the earlier course of dealing of the parties.

### III

The gravamen of this cause is whether the defendant breached the option contract by failing to take delivery of the GNMA bonds or whether the plaintiffs failed to exercise the option because they did not send a timely, written notice of intent to deliver the bonds to the defendant.

### IV

The option at bar contains the following written provision:

This agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights and liabilities of the parties determined, in accordance with the laws of the State of New York.

Generally, courts have given effect to a contractual choice of law clause, such as the one above, which calls for the governance by the laws of a particular state. *See Matter of Penn-Dixie Industries, Inc.,* 22 B.R. 794 (Bkrtcy, S.D.N.Y.1982); *Guaranty Mortgage Co. v. Z.I.D. Associates, Inc.,* 506 F.Supp. 101, 108 (S.D.N.Y.1980); *Reger v. National Association of Bedding Manufacturers Group Insurance Trust Fund,* 83 Misc.2d 527, 541, 372 N.Y.S.2d 97, 115–16 (Sup. St. Westchester County 1975); Restatement (Second) of Conflict of Laws § 187(2) (1971).

Consequently, the substantive law of New York applies in this case.

### V

First, the plaintiffs contend that actual notice of intent to deliver the bonds was given to the defendant and that the defendant waived the requirement of written notice through Barnish's telephone conversations with Scott in January, 1980.

An option is an irrevocable offer for a specified period of time and, like an offer, it ripens and matures into a contract the moment the person to whom the option was given notifies the party giving the option that he will accept it. § 5–1109 General Obligations Law of New York; *1020 Park Ave., Inc. v. Raynor,* 97 Misc.2d 288, 411 N.Y.S. 172 (1978); *Gorham v. Jackson,* 177 N.Y.S. 80, aff'd 232 N.Y. 579, 134 N.E.

579 (1921). When an option is properly accepted by the offeree, the requisite mutuality of assent has been attained, and the unilateral offer becomes a mutually binding contract. *1020 Park Ave., Inc., supra; Silverstein v. United Cerebral Palsy Association,* 17 A.D.2d 160, 232 N.Y.S.2d 968 (1962).

■ The acceptance of an option is not proper unless it corresponds with the offer in every respect, neither falling short of or going beyond the terms proposed, but exactly meeting them at all points. Therefore, where the offer specifies the time, place and mode of acceptance, an acceptance after that time, or at any other place or in any other manner, is not an effective acceptance. *Spratt v. Paramount Pictures,* 178 Misc. 682, 35 N.Y.S.2d 815, 817 (1942); *Barber-Greene Co., Inc. v. M.F. Dollard, Jr., Inc.,* 239 App.Div. 655, 269 N.Y.S. 211 215.

■ It is well settled that a notice exercising an option is ineffective if it is not given within the time specified. *JNA Realty v. Cross Bay Chelsea, Inc.,* 42 N.Y.2d 392, 396, 366 N.E.2d 1313, 397 N.Y.S.2d 958 (1977). If the acceptance of an offer is not within the time specified then it merely becomes a counter offer which in turn must be accepted by the original offeror to create a contract. Williston on Contracts, 3d ed. §§ 92, 93; Restatement, Law of Contracts, § 73; *22 West Main St., Inc. v. Boguszewski,* 34 A.D.2d 358, 311 N.Y.S.2d 565, 567 (1970); *Bridge v. O'Callahan, City Ct.,* 118 N.Y.S.2d 837.

■ In the present case the written notice of intent to deliver the bonds was not sent to the defendant within the time specified in the option contract. In applying the above principle of law, the late notice would have, thus, resulted in the option never ripening into a contract. Moreover, since the written notice was late and was hence a counter offer and since the defendant never accepted the counter offer, the defendant was at no time under a legal obligation to take delivery of the GNMA bonds.

■ Also, after applying the principles referred to heretofore, the oral notice of intent to deliver that the plaintiffs allege was given to the defendant in the January, 1980 telephone conversation between Scott and Barnish would not be a valid exercise of the option since the plaintiffs did not comply with the contract provision requiring written notice.

## VI

The plaintiffs maintain that the contract provision requiring written notice was waived during the telephone conversation in January, 1980, between Barnish and Scott, and so the plaintiffs contend that the oral notice of intent to deliver that was provided by Scott to Barnish in the telephone conversation was sufficient notice.

As mentioned above, the option at bar contained a provision which stated that no term or provision of the option contract could be waived or modified unless it is done so in writing.

New York Obligations Law § 15–301(1) bars the enforcement of an oral modification in the following language:

A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.

■ This statute protects parties to a written agreement who have included a proscription against oral modification in the agreement and on its face bars recovery by any party to a written agreement who attempts to enforce an oral modification of the written terms. *In re Tele/Resources, Inc.,* 21 B.R. 358 (Bkrtcy., S.D.N.Y.1982).

In *Rivers v. Calagna,* 229 N.Y.S.2d 643, 645 (1962), a case dealing with a claimed oral modification of the exercise of an option, the court held that even if it were "to find that the plaintiffs or their attorneys had orally agreed to extend the time within which the defendant could exercise his option to purchase the property, such oral modification, being executory, could not be enforced by the defendant since the written

contract expressly provides that it cannot be changed orally."

■ In the present case the Court cannot find that the defendant modified or waived the contractual provision requiring a written notice of intent to deliver. Even Scott testified that he never mentioned to Barnish that the written notice would not be sent and Barnish never told Scott that the requirement of written notice would be waived. Nevertheless, even if it was found that the defendant had orally waived the provision in the contract calling for a written notice, the Court could not hold that the oral modification of the contract was valid when a written modification was required.

### VII

The plaintiffs also allege that the defendant induced Scott into believing that written notice would not be insisted upon which caused it to change its position in reliance on Barnish's statements, and therefore the plaintiffs contend that the defendant is equitably estopped from claiming that the plaintiffs did not validly exercise the option.

New York Courts have found that a party claiming estoppel must establish: (1) conduct by the estopped party which amounts to concealment of material facts; (2) the intention of the estopped party that such conduct shall be acted upon by the other party; (3) the estopped party's knowledge of the real facts; (4) the other party's ignorance of the facts; (5) the other party's reliance upon the conduct of the estopped party; and (6) the other party's change of position to his prejudice. *Orth-O-Vision, Inv. v. Home Box Office,* 474 F.Supp. 672, 680 (S.D.N.Y.1979); *Gratton v. Dido Realty Co., Inc.,* 89 Misc.2d 401, 391 N.Y.S.2d 954, 955 (Sup.Ct.1977), aff'd 63 App.Div.2d 959, 405 N.Y.S.2d 1001 (1978).

■ The proof in this case does not show the requisite elements of equitable estoppel. There was no proof that the defendant in any manner concealed material facts from the plaintiffs. There is also nothing in evidence to indicate that the

plaintiffs didn't have knowledge of certain facts.

In the January, 1980 telephone conversation so heavily relied upon by the plaintiffs, Scott informed Barnish of the intent to deliver the bonds to the defendant. No mention was made by either party as to fact that a written notice was required. Scott did not ask if the written notice requirement would be waived nor did he inform Barnish that the oral notice would suffice. Barnish did not indicate that the defendant would waive the written notice requirement but instead merely stated that the defendant would be ready to accept the delivery of the bonds.

In *Rose v. Spa Realty Assoc.,* 42 N.Y.2d 338, 341, 366 N.E.2d 1279, 397 N.Y.S.2d 922, 925 (1977), the Court held that the doctrine of equitable estoppel can be used to validate an oral modification only when the conduct of the estopped party is such as to induce "another's significant and substantial reliance upon an oral modification." The discussions between Scott and Barnish do not provide the Court with evidence of the plaintiffs' significant and substantial reliance.

### VIII

■ The plaintiffs also maintain that the conduct of the defendant in the first transaction resulted in a waiver of the written notice requirement in the second transaction or that the parties' course of dealing in the first transaction should be utilized by the Court to estop the defendant from alleging that no written notice was given. The first transaction was an entirely separate and distinct contract. Moreover, nothing in the course of performance of the parties in the first transaction serves as a basis for invoking the doctrines of waiver or estoppel. In the first transaction the written modification in the letter dated July 18, 1979, contained a written notice of an intent to deliver so there was actual written notice in compliance with the contract provisions in the first transaction. Also, the fact that the first transaction was modified in writing after a telephone con-

versation between the parties should, if anything, imply an intent to only modify the contract through a *written* modification.

### IX

The crux of this case centers on one unfortunate fact which is that the plaintiffs neglected to send a written notice to the defendant. Although the circumstances in this case are unfortunate, the Court is not omnipotent with its powers of equity. This is especially true in a case, as this, where the law is clear that an oral notice or an oral modification which is made when a written one is required is invalid unless there is a strong showing of conduct warranting the invocation of the doctrines of waiver and estoppel.

IT IS, THEREFORE, ORDERED that the relief prayed for in the Complaint filed by the plaintiffs, Francis J. Scott and T. Harold Craig, Co-Trustees of G. Weeks Securities, Inc., against the defendant, San Diego Navy Federal Credit Union, is hereby denied.